RICHARD M. CALLAHAN, JR.
225 South Lake Avenue, Suite 300
Pasadena, CA 91101
Telephone: (626) 202-4060
Facsimile: (626) 794-4676
State Bar No. 100446
Email: rmcallahanjr@gmail.com

Attorney for Defendant
PEDRO LOPEZ CHACON

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>PEDRO LOPEZ-CHACON,<br><br>　　　　　Defendant. | Case No. CR 20-321-JAK-1<br><br>**MOTION TO DISMISS THE INDICTMENT UNDER THE EQUAL PROTECTION CLAUSE**<br><br>Date: December 2, 2021<br>Time: 8:30 a.m.<br>Place: Courtroom of the Honorable<br>　　　John A. Kronstadt |

TO UNITED STATES ATTORNEY TRACY WILKISON AND ASSISTANT UNITED STATES ATTORNEYS ELIA HERRERA AND SURIA BAHADUE:

PLEASE TAKE NOTICE that on December 2, 2021, at 8:30 a.m. or as soon as this matter may be heard, Pedro Lopez-Chacon will move to dismiss this indictment. This motion is based upon the attached memorandum, the attached exhibit, the files and records, and any other argument or evidence the Court may consider.

Dated: November 18, 2021.

Respectfully submitted,

THE LAW OFFICES OF
RICHARD M. CALLAHAN, JR.

By: _____
　　RICHARD M. CALLAHAN, JR.
　　Attorney for Defendant
　　PEDRO LOPEZ-CHACON

# TABLE OF CONTENTS
I.  INTRODUCTION ................................................................................................ 1

II. ARGUMENT ..................................................................................................... 2

    A. *ARLINGTON HEIGHTS* GOVERNS MR. LOPEZ-CHACON'S CHALLENGE TO THE CONSTITUTIONALITY OF 8 U.S.C. § 1326 ...................................................................................................... 2

    B. UNDER THE *ARLINGTON HEIGHTS* FACTORS, RACISM WAS A "MOTIVATING FACTOR" IN THE PASSAGE OF THE ILLEGAL REENTRY LAW ............................................................... 4

        1. The Historical Background of the Decision ......................................... 5

        2. The Specific Sequence of Events Leading to the Challenged Action ................................................................................................... 5

        3. The Relevant Legislative or Administrative History .......................... 5

        4. The Legislature's Departures from Normal Procedures or Substantive Conclusions ...................................................................... 5

        5. The Impact of the Official Action and Whether It Bears More Heavily on One Race than Another ...................................................... 6

    C. THE POST-1929 RECODIFICATIONS OF THE ILLEGAL REENTRY LAW DO NOT DEFEAT MR. LOPEZ-CHACON'S CLAIM ............................................................................................................ 7

    D. THE BURDEN OF PROOF NOW SHIFTS TO THE GOVERNMENT ................................................................................................ 8

III. CONCLUSION .................................................................................................. 8

# TABLE OF AUTHORITIES

**Cases**

*Arce v. Douglas*, 793 f.3d 968 (9th Cir. 2015) ............................................................. 3

*Hunter v. Underwood*, 471 U.S. 222 (1985).............................................................. 4, 8

*Loving v. Virginia*, 388 U.S. 1 (1967) ......................................................................... 2

*Ramos v. Louisiana*, 140 S. Ct. 1390 (2020) .............................................................. 1

*Ramos v. Wolf*, 975 F.3d 872 (9th Cir. 2020) ............................................................. 4

*Sessions v. Morales-Santana*, 137 S. Ct. 1678 (2017)................................................ 2

*United States v. Amador-Bonilla*, U.S. Dist. LEXIS 220954 (W.D. Okla. November 16, 2021 ...................................................................................................................... 2

*United States v. Bernal*, 2021 U.S. Dist. LEXIS 178922 (S.D. Cal. Sept. 20, 2021) .. 2

*United States v. Carrillo-Lopez*, CR 20-26-MMD (D. Nev. August 18, 2021) 1, 5, 6, 8

*United States v. Machic-Xiap*, 2021 U.S. Dist. LEXIS 145037, 2021 WL 3362738 (D. Or. Aug. 3, 2021) ................................................................................................... 2

*United States v. Novondo-Ceballos*, 2021 U.S. Dist. LEXIS 151779, 2021 WL 3570229 (D. N.M. Aug. 12, 2021)................................................................................ 2

*United States v. Samuels-Baldeyaquez*, 2021 U.S. Dist. LEXIS 214071, 2021 WL 5166488 (N.D. Ohio, Nov. 5, 2021) ............................................................................ 2

*United States v. Suquilanda*, 2021 U.S. Dist. LEXIS 202398, 2021 WL 4895956 (S.D.N.Y., Oct. 20, 2021) ............................................................................................ 2

*United States v. Wence*, 2021 U.S. Dist. LEXIS 112805, 2021 WL 2463567 (D. VI., June 16, 2021) ............................................................................................................. 2

*United States v. Zepeda*, 2021 U.S. Dist. LEXIS 209853 (C.D. Cal. Jan. 5, 2021) ..... 2

*Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977) ........................................................................................................ 2, 3, 4, 8

*Yick Wo v. Hopkins*, 118 U.S. 356 (1886) ................................................................... 2

*Zadvydas v. Davis*, 533 U.S. 678 (2001) ..................................................................... 4

**Statutes**

8 U.S.C. § 1326 ............................................................................................................. 1

**Other Authorities**

Senate Bill 5094, Public Law 1018 (March 4, 1929) ...................................................... 4

Trelles, Oscar & James F. Bailey, *Immigration and Nationality Acts: Legislative Histories and Related Documents 1950-1978* ........................................................... 7

*U.S. Border Patrol Nationwide Apprehensions by Citizenship and Sector, 2007-2019* ................................................................................................................................ 6

**Constitutional Provisions**

U.S. Const. amend. V................................................................................................... 2

# MEMORANDUM OF POINTS AND AUTHORITIES

## I

## INTRODUCTION

On July 13, 2020, defendant Pedro Lopez-Chacon was arrested and eventually charged in a single-count indictment with being an illegal alien found in the United States following deportation, in violation of 8 U.S.C. §§ 1326(a), (b)(2). Mr. Lopez-Chacon is Hispanic and a citizen of El Salvador. Trial is set for December 14, 2021 before this Court.

In April 2020, the Supreme Court relied on historical evidence of a state legislature's racial motives to strike down a criminal law enacted a century earlier. *See Ramos v. Louisiana*, 140 S. Ct. 1390 (2020). Although the law was later reenacted with no evidence of animus, the Court refused to ignore the "racially discriminatory *reasons* that [the state] adopted [its] peculiar rules in the first place." *Id.* at 1401 (emphasis in original). Similarly, the law criminalizing illegal reentry into the United States at 8 U.S.C. § 1326 also has an "uncomfortable past" that warrants examination. *Id.*

In August of this year, the District Court of Nevada did precisely that. Applying Supreme Court precedent to the illegal reentry statute's troubling history, Chief Judge Miranda M. Du held that § 1326 violates the constitutional guarantee of Equal Protection, requiring dismissal of the indictment. *United States v. Carrillo-Lopez*, __ F.Supp.3d __, 2021 WL 3667330 (D. Nev. Aug. 18, 2021).[1]

Most recent case authority on the issues raised in this motion is contrary to defendant's position, but because the facts and historical evidence show that the original illegal reentry law was enacted with a discriminatory purpose and still has a disparate impact, this Court should adopt the *Carrillo-Lopez* reasoning and hold that § 1326 is

---

[1] A copy of Judge Du's order ("*Carrillo-Lopez* Order") is attached as Exhibit 1, and the extensive record presented to the district court on this issue, as well as the court's analysis and conclusions are incorporated by reference.

unconstitutional under the legal framework in *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977).[2]

## II

## ARGUMENT

### A. *ARLINGTON HEIGHTS* GOVERNS MR. LOPEZ-CHACON'S CHALLENGE TO THE CONSTITUTIONALITY OF 8 U.S.C. § 1326

The Fifth Amendment of the Constitution provides that no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. This clause contains an implicit guarantee of equal protection in federal laws identical to what the Fourteenth Amendment guarantees in state laws. *See Sessions v. Morales-Santana*, 137 S. Ct. 1678, 1686 n.1 (2017). A law may violate equal protection in three ways. First, a law may discriminate on its face. *See*, *e.g.*, *Loving v. Virginia*, 388 U.S. 1 (1967). Second, authorities may apply a facially neutral law in a discriminatory way. *See*, *e.g.*, *Yick Wo v. Hopkins*, 118 U.S. 356 (1886). Third, a legislature may enact a facially neutral law with a discriminatory purpose, which disparately impacts a disfavored group. *See*, *e.g.*, *Arlington Heights*, 429 U.S. at 265-68. Here, Mr. Lopez-Chacon challenges § 1326 under the third rationale, so the legal framework of *Arlington Heights* applies, as the Court in *Carrillo-Lopez* so held. *Carrillo-Lopez* Order (Exhibit 1) at 5.

---

[2] Several district courts out of the Ninth Circuit have reached the opposite conclusion when analyzing Section 1326 under the Equal Protection Clause, including *United States v. Bernal*, 2021 U.S. Dist. LEXIS 178922 (S.D. Cal. Sept. 20, 2021); *United States v. Machic-Xiap*, 2021 U.S. Dist. LEXIS 145037, 2021 WL 3362738 (D. Or. Aug. 3, 2021); *United States v. Zepeda*, 2021 U.S. Dist. LEXIS 209853 (C.D. Cal. Jan. 5, 2021). District courts outside the Ninth Circuit have similarly ruled, including *United States v. Amador-Bonilla*, U.S. Dist. LEXIS 220954 (W.D. Okla. November 16, 2021); *United States v. Samuels-Baldeyaquez*, 2021 U.S. Dist. LEXIS 214071, 2021 WL 5166488 (N.D. Ohio, Nov. 5, 2021); *United States v. Suquilanda*, 2021 U.S. Dist. LEXIS 202398, 2021 WL 4895956 (S.D.N.Y., Oct. 20, 2021); *United States v. Novondo-Ceballos*, 2021 U.S. Dist. LEXIS 151779, 2021 WL 3570229 (D. N.M. Aug. 12, 2021); *United States v. Wence*, 2021 U.S. Dist. LEXIS 112805, 2021 WL 2463567 (D. VI., June 16, 2021).

*Arlington Heights* clarified that the *effect* of a racially discriminatory law does not alone make it unconstitutional; challengers must also show "[p]roof of racially discriminatory intent or purpose" at the time of the law's passage. *Id*. at 265. Determining whether a purpose was discriminatory requires "a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Id*. at 266. *Arlington Heights* provides a non- exhaustive list of factors to consider in this determination, including:

1) the impact of the official action and whether it bears more heavily on one race than another;

2) the historical background of the decision;

3) the specific sequence of events leading to the challenged action;

4) the [legislature's] departures from normal procedures or substantive conclusions; and

5) the relevant legislative or administrative history.

*Arce v. Douglas*, 793 F.3d 968, 977 (9th Cir. 2015) (citing *Arlington Heights*, 429 U.S. at 266-68). If the moving party demonstrates that a racially discriminatory intent or purpose was a motivating factor in the challenged decision, the burden then shifts to the government to establish that "the same decision would have resulted even had the impermissible purpose not been considered." *Arlington Heights* at 270 n. 21.

The threshold for satisfying these factors is low. Since legislatures are rarely "motivated solely by a single concern," a challenger need not show that the legislature's actions "rested solely on racially discriminatory purposes." *Arlington Heights*, 429 U.S. at 265-66. Instead, the challenger need only show "proof that a discriminatory purpose has been a *motivating factor* in the decision." *Id.* at 265–66 (emphasis added). *See also Arce*, 793 F.3d at 977 (quoting *Arlington Heights* to hold that a challenger need not prove discrimination was the "sole purpose" of the challenged action—only that it was a "motivating factor").

Once the challenger shows that discriminatory purpose was a motivating factor, the burden shifts to the law's defender to show that "the same decision would have resulted even had the impermissible purpose not been considered." *Arlington Heights*, 429 U.S. at 270 n.21; *see also Hunter v. Underwood*, 471 U.S. 222, 228 (1985) (if racial discrimination was a motivating factor, "the burden shifts to the law's defenders to demonstrate that the law would have been enacted without this factor."). If the government cannot show that the legislature would have enacted the offending law in the "absence of the racially discriminatory motivation," the law violates the Fifth Amendment and must be invalidated. *Id*. at 225.

Within the boundaries of the United States, the Equal Protection Clause's prohibition on racial discrimination applies equally to noncitizens and citizens alike. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[O]nce an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.") *Ramos v. Wolf*, 975 F.3d 872, 895-896 (9th Cir. 2020). As a result, *Arlington Heights* governs the constitutionality of § 1326.

**B.   UNDER THE *ARLINGTON HEIGHTS* FACTORS, RACISM WAS A "MOTIVATING FACTOR" IN THE PASSAGE OF THE ILLEGAL REENTRY LAW**

Congress first made illegal reentry a crime in 1929. That law provided in relevant part that, "if any alien has been arrested and deported in pursuance of law … and if he attempts to enter the United States … he shall be guilty of a felony [.]" Senate Bill 5094, Public Law 1018 (March 4, 1929). The penalty was up to two years imprisonment. A close examination of the political context underlying the passage of this 1929 law reveals that racism against Latinos was—at the very least—a "motivating factor" in the legislature's passage of this law. *Arlington Heights*, 429 U.S. at 265.

/

/

Five main factors go into the *Arlington Heights* analysis. Each will be considered separately.

### 1. The Historical Background of the Decision

In assessing this factor in *Carrillo-Lopez*, Judge Du noted the testimony of UCLA Professor of History Kelly Lytle Hernandez who testified that "the criminalization of unauthorized entry was a racially motivated act," with passing the Act of 1929 having come on the heels of the National Origins Act of 1924, which "narrow[ed]the pathways of legal immigration" by reserving 96 percent of all quota slots for European immigrants. The National Origins Act exempted immigrants from the Western Hemisphere, in part due to pressure from American industry who relied on Mexican labor. Nativists and eugenics proponents argued against this exemption. *Carrillo-Lopez* Order at 12-13.

### 2. The Specific Sequence of Events Leading to the Challenged Action

In evaluating this criterion in relation to the origins of Section 1326, Judge Du in *Carrillo-Lopez* reflected on expert testimony regarding passing the Act of 1929, and agreed that "the illegal reentry provision of the 1929 law was intended to target Latinos." *Carrillo-Lopez* Order at 13-14.

### 3. The Relevant Legislative or Administrative History

In *Carrillo-Lopez*, Judge Du cited to some of the legislative history for the law replete with "racial remarks" during debate in both the House and Senate toward Latinos. *Carrillo-Lopez* Order at 14-15.

### 4. The Legislature's Departures from Normal Procedures or Substantive Conclusions

In *Carrillo-Lopez*, the court agreed with the defendant's argument that the "1920s was the first and only era in which Congress openly relied on the now discredited theory of eugenics to enact immigration legislation," with illegal reentry laws as one of "few laws still in effect from that era," and that "the racial vitriol expressed during the debates was directed almost exclusively at Mexicans—even though Canadians were also entering the United States in record numbers." *Carrillo-Lopez* Order at 15.

## 5. The Impact of the Official Action and Whether It Bears More Heavily on One Race than Another

In *Carrillo-Lopez*, the defendant argued that Section 1326 disparately impacts Mexican and Latin defendants. While no publicly available data existed as to the national origin of those prosecuted under Section 1326, over 97% of persons apprehended at the border in 2000 were of Mexican decent, 86% in 2005, and 87% in 2010. (*Id.* (citing *U.S. Border Patrol Nationwide Apprehensions by Citizenship and Sector, 2007-2019* (URL omitted))." Carrillo-Lopez further noted that Department of Justice directives to its prosecutors demonstrate that many, if not all, apprehensions are ultimately prosecuted. Judge Du found the defendant's argument convincing. *Carrillo-Lopez* Order at 8-10. While the government admitted that Section 1326 bears more heavily on Mexican and Latinx individuals, it blamed the disparity as being "a product of geography, not discrimination" *Id.* at 9, due to Mexico's proximity to the United States. The judge disagreed, holding "the test for disparate impact only requires evidence that Section 'bears more heavily on one race than another,' a much less stringent standard that the government suggests." *Carrillo-Lopez* Order at 9-10.

As the *Carrillo-Lopez* Court concluded after analyzing the *Arlington Heights* factors and granting defendant's motion to dismiss:

> Taking these factors into account, the Court is persuaded that Carrillo-Lopez has proffered sufficient evidence under the *Arlington Heights* framework to demonstrate that racial animus was a strong motivating factor in the passage of the Act of 1929. The evidence clearly indicates, as both parties and other district courts agree, that the Act of 1929 was passed during a time when nativism and eugenics were widely accepted, both in the country at large and by Congress, and that these racist theories ultimately fueled the Act's passage.

*Carrillo- Lopez* Order at 15.

/

/

/

## C. THE POST-1929 RECODIFICATIONS OF THE ILLEGAL REENTRY LAW DO NOT DEFEAT MR. LOPEZ-CHACON'S CLAIM

The government may argue that no matter how racially discriminatory the original criminalization of illegal reentry, it matters not because the offense has been subsequently recodified—first as part of the McCarran-Walter Act of 1952, which became the basis of the Immigration and Nationality Act, and several times since.[3] While the illegal reentry law has been modified several times over the years, Supreme Court precedent holds that the mere "reenactment" or "recodification" of a law, with no substantial changes, does not shift *Arlington Heights* analysis from the original law. That happened with illegal reentry in the McCarran-Walter Act, as Congress explicitly "reenacted" the law with the intent of "carry[ing] forward" its original effect. S. Rep. No. 81-1515, at 655 (1950), *reprinted in* Trelles, Oscar & James F. Bailey, *Immigration and Nationality Acts: Legislative Histories and Related Documents 1950-1978.* The Court's focus should remain on the 1929 law.

But even if this Court instead looks to the 1952 law, the *Arlington Heights* factors indicate that racial prejudice was still a motivating factor of passing § 1326. After a thorough 12-page examination of the 1952 law, the *Carrillo-Lopez* Court found that the requirements of *Arlington Heights* had been satisfied:

> The totality of evidence shows that the same factors motivating the passage of Section 1326 in 1929 were present in 1952. Not only did Congress fail to repudiate the racial animus clearly present in 1929, but it expanded the government's power to enforce unlawful reentry, despite President Truman's call to reimagine immigration laws. The 1952 Congress incorporated the advice of supporters of the bill who used racial epithets in

/

---

[3] *See* June 27, 1952, c. 477, Title II, ch. 8, § 276, 66 Stat. 229; Pub.L. 100-690, Title VII, § 7345(a), Nov. 18, 1988, 102 Stat. 4471; Pub.L. 101-649, Title V, § 543(b)(3), Nov. 29, 1990, 104 Stat. 5059; Pub.L. 103-322, Title XIII, § 130001(b), Sept. 13, 1994, 108 Stat. 2023; Pub.L. 104-132, Title IV, §§ 401(c), 438(b), 441(a), Apr. 24, 1996, 110 Stat. 1267, 1276, 1279; Pub.L. 104-208, Div. C, Title III, §§ 305(b), 308(d)(4)(J), (e)(1)(K), (14)(A), 324(a), (b), Sept. 30, 1996, 110 Stat. 3009-606, 3009-618 to 3009-620, 3009-629.

official documents, while contemporaneously passing another bill targeting "wetbacks." Although it is "not easy" to prove that racism motivated the passage of a particular statute, the Court reasons that it cannot be impossible, or *Arlington Heights* would stand for nothing.

*Carrillo- Lopez* Order at 26-27.

### D. THE BURDEN OF PROOF NOW SHIFTS TO THE GOVERNMENT

Because Mr. Lopez-Chacon has shown both a discriminatory purpose and a disparate impact underlying § 1326, the burden shifts to the government to show that the Undesirable Aliens Act of 1929 would have passed "even had the impermissible purpose not been considered." *Arlington Heights*, 429 U.S. at 266-68, 270 n.21; *see also Hunter*, 471 U.S. at 228 (shifting the burden to the law's defenders to "demonstrate that the law would have been enacted without this factor").

## III

## CONCLUSION

Mr. Lopez-Chacon respectfully requests this Court join the *Carrillo-Lopez* court, hold that 8 U.S.C. § 1326 violates the Equal Protection Clause, and dismiss the indictment.

Dated:  November 18, 2021.                                   Respectfully submitted,

                                                             RICHARD M. CALLAHAN, JR.

                                                             By: _____
                                                                 RICHARD M. CALLAHAN, JR.
                                                                 Attorney for Defendant
                                                                 PEDRO LOPEZ-CHACON